# Commonwealth *v.* Lehigh Valley Railroad Company, Appellant.

*Taxation—State loan taxes—Bonds—Exemptions—Savings institutions having no capital stock—Act of May 1, 1909, P. L. 298—Constitutional law—Title of acts.*

. 1. Corporate indebtedness issued free and clear of taxes and owned by savings institutions having no capital stock is subject to the State loans tax and is not relieved or exempted therefrom by the provisions of the Act of May 1, 1909, P. L. 298.

2. A railroad corporation is liable for the payment of State loans tax upon bonds issued by it although held by savings institutions having no capital stock where the bonds are issued free and clear of taxes and contain a provision that the interest should be paid without deduction for State taxes.

3. Sufficient notice is given in the title of the Act of May 1, 1909, P. L. 298, of the matter contained in proviso 4 of the said act.

Argued Jan. 21, 1914.   Appeal, No. 32, May T., 1913,

by defendant, from judgment of C. P. Dauphin Co., Commonwealth Docket, 1911, No. 265, for plaintiff in case of Commonwealth of Pennsylvania v. Lehigh Valley Railroad Company. Before FELL, C. J., BROWN, MESTREZAT, POTTER and ELKIN, JJ. Affirmed.

Appeal from tax settlement. Tried by the court without a jury. KUNKEL, P. J., filed the following opinion:

This is an appeal from the settlement of an account against the defendant company for tax on its loans for the year 1910. The case has been submitted to the court to be tried without a jury agreeably to the provisions of the Act of April 22, 1874, P. L. 109. There being no dispute respecting the facts, we find them to be as set forth in the defendant's requests for findings of fact filed herewith. Summarized they are as follows:

### FACTS.

On July 25, 1911, the account appealed from was settled against the defendant company for tax on its loans for the year 1910, in which account it was charged with a tax on $53,617,000 of indebtedness. The tax, after the allowance of commissions, amounted to $204,957.81, of which amount the defendant paid $180,000 and took this appeal from the balance of the account. The $53,-617,000 of indebtedness taxed included bonds and notes held by savings institutions of this State having no capital stock to the amount of $4,598,000. These securities contained an agreement on the part of the defendant company that the interest thereon should be paid without deduction for any tax of any state, which the defendant company might be required to pay or to retain therefrom under present or future laws, and some of the securities contained an agreement in so many words that the defendant would pay the tax. The defendant contends that the indebtedness owned and held by savings institutions of this State having no capital stock is not

subject to tax by virtue of the exemption contained in Proviso 2 of the Act of May 1, 1909, P. L. 298.

### DISCUSSION.

The questions presented by this appeal relate to the validity and construction of Provisos 2 and 4 of the Act of May 1, 1909, P. L. 298. The act itself is an amendment of the tax legislation contained in the Act of June 1, 1889, P. L. 420, as amended by the Act of June 8, 1891, P. L. 229, and purports to relieve and exempt savings institutions having no capital stock from the loans tax therein provided. It is a reenactment of the first section of the Act of June 8, 1891, and imposes an annual tax of four mills on corporate bonds or securities held, owned or possessed by corporations of this State or any other state, but declares by Proviso 2, "That the provisions of this act shall not apply to building and loan associations or to savings institutions having no capital stock"; and by Proviso 4, "That if at any time, either now or hereafter, any persons, individuals or bodies corporate, have agreed or shall hereafter agree to issue his, their or its securities, bonds or other evidences of indebtedness clear of and free from the said four mills tax, herein provided for, or have agreed or shall hereafter agree to pay the same, nothing herein contained shall be so construed as to relieve or exempt him, it or them from paying the said four mills tax on any of the said such securities, bonds, or other evidence of indebtedness as may be held, owned by or owing to the said saving institution having no capital stock." It is manifest that the two provisos must be construed together; for Proviso 4 directs that "nothing herein contained shall be so construed as to relieve or exempt ......from paying the said four mills tax," etc. It thus expressly refers to Proviso 2, which grants the exemption, and plainly places a limitation on its construction and scope.

To understand the legislative intention expressed by

the provisos, they must be construed in the light of the law as it stood at the time they were enacted. At that time corporate securities held and owned by savings institutions having no capital stock were taxable annually at the rate of four mills, and such tax was required to be collected by the corporation issuing the securities. The Act of June 30, 1885, P. L. 193, imposed upon the corporation the duty to deduct the tax from the interest on its indebtedness when it paid the same and to return and pay the tax into the State treasury. If it wilfully failed or neglected to perform the duty, it itself became liable for the tax: Com. v. Del. Div. Canal Co., 123 Pa. 594; Com. v. Lehigh Valley R. R. Co., 129 Pa. 429; Com. v. Philadelphia & Reading R. R. Co., 150 Pa. 312; Com. v. Lehigh Valley R. R. Co., 186 Pa. 235. Proviso 2 of the Act of May 1, 1909, relieves and exempts savings institutions having no capital stock from the tax, but in Proviso 4 the legislature recognizes the fact that such savings institutions may hold or own corporate securities containing an agreement on the part of the corporation issuing them to pay the tax, and therefore it provides that in such case the corporation shall not be exempt from the duty of returning and paying the tax as theretofore required by law. The relief or exemption which Proviso 2 was intended to afford was for the benefit of the savings institution and not for the benefit of the corporation issuing the securities. Legislative relief or exemption was intended to be afforded where such relief or exemption was necessary, and not where, because the debtor corporation had assumed the payment of the tax or had issued its securities clear of or free from the tax, no relief was needed. It is quite clear to us, that although Proviso 4 is awkwardly constructed, it intended to preserve the tax on corporate securities owned or held by savings institutions which had no capital stock, where in and by the securities themselves the institutions were already relieved, and needed no legislative exemption. The legislative intention to re-

tain the tax is apparent, although it has been expressed by an indirect rather than by a direct declaration to that effect.

The contention of the defendant company that a tax is imposed by Proviso 4 on the corporation issuing the securities is untenable. The proviso does not impose any tax on corporate securities, but directs that the corporation shall not be relieved or exempt from paying the tax which it theretofore was required to deduct from the interest paid on its securities. The effect of the language used is to continue the tax on such securities, even though owned and held by savings institutions having no capital stock. Proviso 4, as we have said, appears to be an indirect way of declaring that the tax shall remain on the securities so held. A reference to the Act of June 30, 1885, P. L. 193, will show that Proviso 4, when it declares that "nothing herein contained shall be so construed as to relieve or exempt" the corporation issuing the securities "from paying" the four mills tax on the securities held, owned by or owing to the savings institution having no capital stock, is but a recognition of the former's requirements with respect to paying, which are as follows: "It shall be his further duty (the duty of the treasurer of the corporation issuing the securities) to deduct three mills (now four mills; Act of June 8, 1891, P. L. 229; Com. v. Wilkes-Barre and Scranton Ry. Co., 162 Pa. 614,) on every dollar of the interest paid as aforesaid and return the same into the state treasury," and again "for every failure to assess and pay said tax," and further "on payment of said tax." It thus clearly appears that the tax which the corporation is not to be relieved of by Proviso 4 from paying is the tax which it is its duty to collect and pay under the Act of 1885. The proviso declares it shall not be relieved of that duty, and if not relieved, it must be because the tax on the securities issued free and clear of tax is retained. The result of the views thus expressed is to obey

the mandate in the proviso as to the construction of the Act, and to relieve from the tax only such corporate securities owned by savings institutions having no capital stock as have been issued without any stipulation for the payment of the tax by the debtor corporations.

What we have said we think disposes of the defendant's contention that Proviso 4 is void, because no notice thereof is given in the title. If the interpretation we have adopted is the correct one, the title is wider in scope than the provisos. It purports to relieve and exempt wholly from the provisions of the act savings institutions having no capital stock, whereas the construction we have placed on Proviso 4 restricts the exemption in Proviso 2 to such corporate securities owned and held by them as have not been issued free and clear of the tax.

It also disposes of the defendant's objection that Proviso 4 attempts to enforce the contract between it and the owners of its securities. The liability of the defendant for the tax does not arise out of the contract, but out of the legislation which imposes the tax and which requires the defendant to collect and pay. The exemption from the tax is modified by the proviso as respects the one kind of securities; as to the other kind only, the exemption remains. The language of the proviso is descriptive merely of the kind which shall not receive the exemption.

The constitutionality of Proviso 2 seems to be conceded; and it is not disputed that there is a recognized difference between corporate securities relieved by agreement of the parties from tax and those in which there is no agreement for relief.

The classification is not an arbitrary one, but one which actually exists in the business world. If the power exists to relieve savings institutions as a class from the tax on all their corporate securities, we cannot see how it may not be exercised so as to relieve them

from the tax on some of their corporate securities, all members of the class being treated alike.

It appears in the case before us that the indebtedness on which the tax is sought to be recovered was issued by the defendant company free and clear of tax, it being provided in and by the securities that the interest should be paid without deduction for State tax. This stipulation in its usual and popular sense means that the securities should be free of tax so far as the holders or owners thereof were concerned. In four classes of obligations the defendant agreed to pay the State tax to which its securities were or might be subjected. Among the owners of the securities, to the amount of $4,598,000, were several savings institutions of this State having no capital stock. The tax on this latter amount the defendant failed to deduct from the interest which it paid thereon for the year for which this settlement was made.

### CONCLUSIONS OF LAW.

Applying the views we have expressed as to the construction and validity of the provisos to the Act of May 1, 1909, we conclude:

1. That the indebtedness of $4,598,000, issued free and clear of tax and owned by savings institutions having no capital stock, is subject to the loans tax and is not relieved or exempted therefrom by Proviso 2 of the Act of May 1, 1909.

2. That the defendant company, having failed to deduct the tax thereon when it paid the interest, is liable therefor.

3. That the Commonwealth is entitled to recover as follows:

Indebtedness, ...................... $53,617,000· 00

Tax, less commission, ................ $204,957 81
Less tax on bonds held by Harrisburg
  Trust Company and Mauch Chunk

Heat, Power and Electric Company,
$26,000, ........................    104 00

|  |  |  |
|---|---|---|
|  | $204,853 | 81 |
| Less amount paid, ................ | 180,000 | 00 |
|  | $24,853 | 81 |
| Interest from Sept. 25, 1911, .......... | 2,363 | 15 |
| Attorney General's commission, ....... | 1,360 | 84 |
| Total amount due, ........... | $28,577 | 80 |

Accordingly we direct judgment to be entered in favor of the Commonwealth and against the defendant for the sum of $28,577.80, unless exceptions be filed within the time limited by law.

*Errors assigned* were in dismissing exceptions to the opinion of the court.

*A. C. Stamm,* with him *John G. Johnson,* for appellant.

*William M. Hargest,* Second Deputy Attorney General, with him *John C. Bell,* Attorney General, for appellee.

Per Curiam, February 16, 1914:
The judgment is affirmed on the opinion of the learned president judge of the Common Pleas.